UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

DEMITRUS COOPER, *on behalf of
himself and others similarly
situated in the proposed FLSA
Collective Action*,

                *Plaintiff*,          **MEMORANDUM & ORDER**

   - against –          23-CV-1675 (KAM)(TAM)

FIRE & ICE TRUCKING, CORP., and
CHERYL OWENS,

               *Defendants*.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Demitrus Cooper ("Cooper" or "Plaintiff") brought this action against Defendants Fire & Ice Trucking, Corp., and Cheryl Owens (together, "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 et seq. and the New York State Labor Law ("NYLL") § 190 et seq. Plaintiff seeks unpaid wage and overtime pay, unpaid spread-of-hours pay, FLSA liquidated damages, NYLL liquidated damages, damages for failure to provide written notice of rate of pay or wage statements, attorneys' fees and costs, and pre- and post-judgment interest. (*See generally* ECF No. 1, Complaint ("Compl.").) Defendants failed to appear or otherwise defend this action. After the Clerk of the Court entered default against defendants pursuant to Rule 55(a) of the Federal

Rules of Civil Procedure, Plaintiff filed the instant motion for entry of default judgment.   For the reasons stated herein, Plaintiff's motion for entry of a default judgment is **GRANTED** in part and **DENIED** in part pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.   Plaintiff is awarded $68,278.73 in damages, $13,379.38 in pre-judgment interest, $6,279.38 in attorneys' fees, and $749.00 in costs, plus post-judgment interest as prescribed in 28 U.S.C. § 1961.

<u>**BACKGROUND**</u>

The following facts are taken from Plaintiff's Complaint, Motion for Default Judgment, supporting memorandum, and supporting declaration and affidavits.   (*See* Compl.; ECF No. 26, Mem. in Supp. of Mot. for Default J. ("Mem."); ECF No. 27, Decl. of Jason Mizrahi ("Mizrahi Decl."); ECF No. 28, Aff. of Demitrus Cooper ("Cooper Aff."); ECF No. 33, Supplemental Aff. of Demitrus Cooper ("Cooper Supp. Aff.").)   Given Defendants' default, the Court accepts as true all well-pleaded factual allegations in the Complaint, except as to damages.   *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

**I.   Factual Background**

Plaintiff alleges that Defendant Fire & Ice Trucking, Corp. ("Fire & Ice") is a New York corporation with its principal place of business in Brooklyn, New York.   (Compl. at ¶¶ 9–10.)   Fire & Ice has employees engaged in commerce and an annual gross sales

2

volume of at least $500,000.  (*Id.* at ¶ 11.)  Plaintiff also alleges that Defendant Cheryl Owens ("Owens") has "operational control over," has an ownership interest in, and "control[s] significant functions of" Fire & Ice.  (*Id.* at ¶¶ 14-18, 25.) Plaintiff Cooper worked as a driver and general worker at Fire & Ice, which the Complaint describes as a courier company.  (*Id.* at ¶ 6.)  Cooper worked for Defendants from May 2017 to December 2018, again from July 2021 to December 2021, and again from June 2022 to January 4, 2023.  (*Id.; see also* ECF 33-1, Cooper Supp. Aff. Ex. A.)

According to Plaintiff's complaint, Defendants had the power to hire and fire Plaintiff, control the terms and conditions of Plaintiff's employment, and determine the rate and method of Plaintiff's compensation.  (Compl. at ¶ 32.)  Further, both Fire & Ice and Owens "possessed substantial control over" Plaintiff's working conditions and the policies and practices regarding Plaintiff's employment and compensation.  (*Id.* at ¶ 27.)  Defendant Owens set employees' schedules and maintained employee records. (*Id.* at ¶ 17.)  Plaintiff was not required to keep track of his time and is unaware of Defendants having used sign-in sheets, punch cards, or any other time tracking methods that would have reflected the actual number of hours he worked.  (*Id.* at ¶ 44.)

From May 1, 2017, through December 31, 2018, Cooper worked at Defendants' courier company five days per week, eleven hours per

3

day, for approximately 55 hours per week, each week. (Compl. at ¶ 36; *see also* Cooper Supp. Aff. Ex. A.) Cooper worked the same schedule, for 55 hours per week, each week, between July 1, 2021, and Decembre 31, 2021. (Compl. at ¶ 37; *see also* Cooper Supp. Aff. Ex. A.) Cooper also worked 55 hours per week, on the same schedule, between June 1, 2022, through September 1, 2022. (Compl. at ¶ 38; *see also* Cooper Supp. Aff. Ex. A.) Between October 1, 2022, and January 4, 2023, Cooper worked between six and seven days per week, eleven hours per day, for approximately 71.5 hours per week. (Compl. at ¶ 39; *see also* Cooper Supp. Aff. Ex. A.) During all relevant periods that Cooper worked for Defendants, he was "paid a flat salary of $750 per week." (Compl. at ¶ 40.)

Defendants required Plaintiff to work in excess of 40 hours per week, but never paid an overtime premium of one- and one-half-times the regular rate of pay for those hours worked in excess of 40. (*Id.* at ¶ 41.) Defendants also did not provide Plaintiff wage statements in accordance with Section 195(3) of the NYLL. (*Id.* at ¶ 46.) Finally, Defendants did not give Plaintiff notice of his rates of pay, Defendants' courier company's regular pay day, or "such other information" required by Section 195(1) of the NYLL. (*Id.* at ¶ 47.)

Plaintiff's work for Fire & Ice consisted of loading a vehicle at the company's dispatch location, driving the vehicle within New York City to deliver packages, and then returning the vehicle to

4

the dispatch location.    (Cooper Supp. Aff. at ¶ 5.)    Plaintiff's
typical   route   was   in   Harlem,   NY,   and   his   duties   and
responsibilities did not require him to travel outside the state
of New York.    (*Id.* at ¶¶ 8-10.)

## II.  Procedural Background

Plaintiff commenced this action against Defendants Fire & Ice
and Owens, as well as a third defendant, Pedro J. Fortunato, on
March 5, 2023.    (*See generally* Compl.)    Plaintiff subsequently
withdrew the claims against Fortunato via a notice of voluntary
dismissal entered pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), which
was so ordered by the Court on May 5, 2023.    (ECF No. 14.)    The
first four counts of Plaintiff's Complaint allege violations of
the FLSA's and the NYLL's minimum wage and overtime regulations.
(*See* Compl. at ¶¶ 53-72.)    The next three counts allege violations
of the NYLL's wage notice, wage statement, and spread-of-hours pay
regulations.   (*See id.* at ¶¶ 73-83.)    Plaintiff seeks certification
of this action as a FLSA collective action, declaratory relief,
unpaid wages, damages, pre-judgment and post-judgment interest,
attorneys' fees, and costs.    (*See id.* at pp. 13-14.)

On March 8, 2023, the Clerk of Court issued three summons for
each defendant at each of the following addresses: (1) 300 Maspeth
Ave., Brooklyn, NY 11211; (2) 540 Osborn St., #1D, Brooklyn, NY
11212; (3) 514 Crescent St., Brooklyn, NY 11208.    (ECF No. 5.)    On
March 21, 2023, Plaintiff filed an affidavit of service stating

that the summons and Complaint had been served on Fire & Ice
through the New York Secretary of State on March 20, 2023. (ECF
No. 9.) On March 22, 2023, Plaintiff filed an affidavit of service
stating that the summons and Complaint had been served on Owens
via personal service at 540 Osborn St., #1D, Brooklyn, NY 11212 on
March 17, 2023. (ECF No. 10.) Subsequently, on April 17, 2023,
Plaintiff filed a request for a certificate of default against
Defendants Owens and Fire & Ice, based on their failure to answer
or otherwise respond to the complaint. (ECF No. 11.) The Clerk
of Court entered a certificate of default against both defendants
on April 21, 2023. (ECF No. 12.)

As previously mentioned, on May 5, 2023, Plaintiff filed a
notice of voluntary dismissal without prejudice as to Defendant
Pedro J. Fortunato, which was accepted by the Court on the same
day. (ECF Nos. 13, 14.) Subsequently, Plaintiff filed requests
for several extensions of time to file a motion for default
judgment before ultimately filing the motion on October 2, 2023.
(ECF Nos. 15-22.) On December 19, 2023, the Court denied
Plaintiff's motion without prejudice, noting that the attached
affidavit in support was from an individual, purporting to be the
plaintiff, who was not a party to the case, and referred to an
employer also not a party to the case. (Docket Order dated
December 19, 2023.) The Court Ordered Plaintiff to Show Cause as
to why Plaintiff's counsel's conduct in the matter did not violate

Fed. R. Civ. P. 11(b), and should not be subject to sanctions. (*Id.*)  Plaintiff's counsel responded to the Order to Show Cause on January 5, 2024, and the Court "reluctantly excuse[d] the errors made in counsel's filing, but caution[ed] counsel that future non-compliance with Rule 11 is likely to result in sanctions." (Docket Order dated January 5, 2024.)

Plaintiff subsequently filed his renewed motion and corrected supporting materials on January 11, 2024, and served the Defendants with the motion papers.  (*See* ECF No. 25, Mot. for Default J.; Mem.; Mizrahi Decl.; Cooper Aff.)  On May 22, 2024, the Court ordered Plaintiff to submit a supplemental affidavit "providing additional factual information to allow the Court to determine whether Plaintiff falls within the Motor Carrier Act of 1935 ('MCA') Exemption to the FLSA and NYLL," along with an alternate damages spreadsheet calculating Plaintiff's damages "based on the method prescribed in 12 N.Y. Comp. Codes R. & Regs. § 142-2.16." (Docket Order dated May 22, 2024.)  Plaintiff filed the supplemental response on June 25, 2024, (Cooper Supp. Aff.), and filed proof of service of the supplemental submission on the Defendants on June 26, 2024, (ECF No. 34, Affidavit of Service).

## LEGAL STANDARD

Pursuant to Rule 55, courts follow a two-step process to enter default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  First, when the defendant fails

to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk of court enters the defendant's default. *See* Fed. R. Civ. P. 55(a).  A court considers an entry of default against a party to be an admission of all the well-pleaded allegations in the complaint regarding liability.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).  Second, if the defaulting party fails to appear or move to set aside the entry of default under Rule 55(c), the opposing party may move the court to enter a default judgment to establish liability and damages. *See* Fed. R. Civ. P. 55(b)(2).  Before entering a default judgment, the court "must ensure that (1) jurisdictional requirements are satisfied; (2) the plaintiff took all the required procedural steps in moving for default judgment; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020) (citations omitted). The court also must find a basis for the damages specified in the default judgment.  *Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 1:22-cv-5942 (NGG), 2023 WL 5703698, at *3 (E.D.N.Y. Sept. 5, 2023).

Although the court accepts as true all well-pleaded allegations in the complaint, the court must still ensure the allegations provide a basis for liability and relief, and the court

has discretion to require further proof of necessary facts. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). If the unchallenged facts establish the defendant's liability, the court determines the amount of damages due. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999). The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,* 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I. Jurisdiction

The Court may not enter a default judgment unless it has both subject-matter jurisdiction over the action and personal jurisdiction over each defendant. *See Covington Indus., Inc. v. Resintex A.G.,* 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A. Subject-Matter Jurisdiction

Federal district courts have original subject-matter jurisdiction over all civil actions "arising under" the laws of the United States. 28 U.S.C. § 1331. The FLSA, a federal statute, creates the cause of action for the first and second counts in Plaintiff's Complaint. (*See* Compl. at ¶¶ 53-62.) Nothing in the

record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, or wholly insubstantial or frivolous.[1]  *See A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022) (listing foregoing reasons why subject-matter jurisdiction may not exist even where the complaint contains claims technically arising under federal law).  Plaintiff's Complaint thus arises under the laws of the United States, which gives the Court federal question subject-matter jurisdiction over this action.  *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court has supplemental jurisdiction over Plaintiff's NYLL claims.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Here, supplemental jurisdiction clearly extends to Plaintiff's third and fourth claims, which seek to recover for unpaid minimum wages and overtime premiums under the NYLL, because they virtually overlap with Plaintiff's first two claims, which seek to recover for closely related violations under

---

[1] The Court notes that a subset of Plaintiff's FLSA claims are time-barred, as "[t]he FLSA's limitations period for minimum wage and overtime claims is two years, unless the employer's violation is willful, in which case the period is three years." *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 208 (E.D.N.Y. 2021); *see also* 29 U.S.C. § 255(a).  Plaintiff filed his claim on March 5, 2023, so any claims prior to March 5, 2020, would be time-barred under the FLSA.  (*See* Compl.)  Nonetheless, Plaintiff's claims beginning in July 2021 through January 2023 are timely, and provide federal question jurisdiction for this action.

the FLSA.  (*See* Compl. at ¶¶ 63-72.)  Plaintiff's fifth through seventh claims, which allege violations of the NYLL's wage notice, wage statement, and spread-of-hours pay regulations under the NYLL, (*see id.* at ¶¶ 73-83), lack precise analogues in the FLSA. Still, those claims form part of the same case or controversy because "[r]esolving all of these claims requires[s] considering evidence of the hours Plaintiff worked, the rate and method by which he was paid, the amounts he was paid, and the parties' records (or lack thereof) on these subjects."  *See Jenkins v. Yellowstone Props., Inc.*, No. 17-CV-7764 (VEC), 2019 WL 4392955, at *2 (S.D.N.Y. Sept. 12, 2019) (citing *Lyndonville Sav. Bank & Tr. Co. v. Lussier,* 211 F.3d 697, 704 (2d Cir. 2000)).

The Court ultimately lacks subject-matter jurisdiction over, and dismisses without prejudice, Plaintiff's wage notice and wage statement claims under the NYLL, (*see* Compl. at ¶¶ 73-79), however, because Plaintiff failed to allege facts to establish his standing to pursue those claims in federal court.  Article III of the federal Constitution restricts federal court power to hearing "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  A "case" or "controversy" cannot exist if the plaintiff lacks a personal stake, or "standing."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To have Article III standing, the plaintiff must have suffered an injury-in-fact likely caused by the defendant's allegedly unlawful conduct and redressable by a

11

favorable court decision.  *Id.*  The injury must be "concrete and particularized," *id.*, which means some specific harm to the plaintiff beyond the defendant's technical violation of a statutory mandate, *id.* at 440.  Standing is not "dispensed in gross."  *Id.* at 431.  Rather, the plaintiff must show standing separately for each claim he or she presses.  *Id.*

Here, Plaintiff does not link any legally cognizable injury that he personally experienced to Defendants' failure to provide wage statements and wage notices under the NYLL.  The Complaint merely alleges that Defendants failed to comply with these statutory mandates.  (*See* Compl. at ¶¶ 75, 78.)  Plaintiff Cooper's supporting affidavit elaborates that "Defendants' failure to provide accurate wage notices and accurate wage statements denied me of my statutory right to receive true and accurate information about the nature of my employment and related compensation policies," however, he still fails to establish an injury-in-fact.  (*See* Cooper Aff. at ¶ 13.)  Without some tangible downstream harm flowing from the statutory violations Plaintiff cannot have suffered a concrete injury resulting from Defendants' violations of the NYLL's wage statement and wage notice requirements.  Thus, he lacks Article III standing to pursue those claims in this Court.[2]  Multiple courts in this district have reached similar

---

[2] The Court notes that it made the same finding in *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM), 2023 WL 8003303, at *4 (E.D.N.Y. Nov. 17, 2023), a case brought by the same counsel as the instant case, and with

results after the Supreme Court's decision in *TransUnion* clarified the requirements to establish standing, beyond bare allegations of statutory violations. *See, e.g.*, *Quieju v. La Jugeria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023); *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023); *Sevilla v. House of Salads One LLC*, 20-CV-6072 (PKC), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022). Thus, because Plaintiff lacks standing, the Court lacks subject matter jurisdiction over his wage notice and wage statement claims under the NYLL.

**B.   Personal Jurisdiction**

The Court finds that it has personal jurisdiction over each defendant. Personal jurisdiction must comport with both state law and the Due Process Clause of the federal Constitution. *Relevant Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023). New York law authorizes personal jurisdiction over domestic corporations, N.Y. C.P.L.R. ("CPLR") § 301, and over non-domiciliary defendants who transact business within the state, CPLR § 302(a)(1).

The Due Process Clause is satisfied if the court has general or specific personal jurisdiction over the defendant. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021);

---

identical language regarding the impact of the violation in the Plaintiff's affidavit.

*see* U.S. Const. amend. XIV, § 1.  A court has "general" personal jurisdiction over an individual defendant sued in his or her place of domicile and over a corporate defendant sued in its state of incorporation or principal place of business.  *Ford*, 592 U.S. at 358-59.  A court has "specific" personal jurisdiction over a defendant that purposefully avails itself of the privilege of doing business in the forum state where the plaintiff's claim arises out of the defendant's contacts with the forum. *Id.* at 359.

Fire & Ice is a New York corporation with its principal place of business in Brooklyn, New York. (*See* Compl. at ¶¶ 9-10.)  Thus, the Court may exercise general personal jurisdiction over Fire & Ice in accordance with state law and the Due Process Clause.  *See* CPLR § 301; *Ford*, 592 U.S. at 359.  Plaintiff does not allege Defendant Owens' citizenship; however, they allege that she transacted business within New York as the owner and manager of Fire & Ice, which is the conduct that gave rise to Plaintiff's claims against her. (*See* Compl. at ¶¶ 14-16, 24-25.)  Thus, the Court may exercise specific personal jurisdiction over her.  *See* CPLR § 302(a)(1); *Ford*, 592 U.S. at 359.

## II.  Procedural Requirements

Before the court will enter a default judgment, the plaintiff must show that entry of default was appropriate, which itself requires showing that the defendant was effectively served with process.  *Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54

14

(2d Cir. 2017) (summary order).  Local Rule 55.2 imposes the additional requirements that the plaintiff attach certain materials to the motion for default judgment and file proof that all motion papers were mailed to the defendant.

###### A.   Service of Process

The Court finds that Plaintiff properly served each defendant with the summons and complaint.  Federal Rule of Civil Procedure 4(e)(1) and 4(h)(1)(A) permit a party to effect service in accordance with the rules of the state where the district is located or where service is made.

As to Fire & Ice, state law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the corporation.  N.Y. Bus. Corp. Law § 306(b)(1).  Here, Plaintiff served Fire & Ice with notice of this action by his process server delivering the summons and Complaint to Nancy Doughtery, an agent in the Office of the Secretary of State authorized to accept service for Fire & Ice. (*See* ECF No. 9.)  Thus, Plaintiff properly served Fire & Ice.

As to Defendant Owens, state law permits a party to effect service by delivering the summons within the state to the person to be served.  CPLR § 308(1).  Here, Plaintiff served Defendant Owens with notice of this action by his process server delivering the summons and Complaint to Owens at 540 Osborn St., #1D, Brooklyn, NY 11212, and leaving those documents with Defendant

15

Owens herself.  (*See* ECF No. 10.)  Thus, Plaintiff properly served Defendant Owens.

### B.  Entry of Default

The Court next finds that the Clerk of Court properly entered a certificate of default against each defendant.  Because Fire & Ice was served on March 20, 2023, (*see* ECF No. 9), it was required to answer or otherwise respond to the Complaint by April 10, 2023.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  When it failed to do so, Plaintiff filed a request for a certificate of default and the other materials required by Local Rule 55.1 on April 17, 2023.  (*See* ECF No. 11.)  The Clerk of Court entered a certificate of default against Fire & Ice on April 21, 2023.  (ECF No. 12.)

Because Defendant Owens was served on March 17, 2023, (*see* ECF No. 10), she was required to answer or otherwise respond to the Complaint by April 7, 2023.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  When she failed to do so, Plaintiff filed a request for a certificate of default and the other materials required by Local Rule 55.1 on April 17, 2023.  (*See* ECF No. 11.) The Clerk of Court entered a certificate of default against Defendant Owens on April 21, 2023.  (ECF No. 12.)

### C.  Local Rule 55.2

Local Rule 55.2(b) requires that a plaintiff attach to a motion for default the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment.  Local

Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant.

Plaintiff's Motion for Default Judgment is supported by an affirmation that declares Fire & Ice and Owens were served with all required documents at their last known addresses[3]: (1) 300 Maspeth Ave., Brooklyn, NY 11211; (2) 540 Osborn St., #1D, Brooklyn, NY 11212; (3) 514 Crescent St., Brooklyn, NY 11208. (*See* Mizrahi Decl. Ex. G.)   Accordingly, Plaintiff has met the requirements of Local Rule 55.2(c).

## III. Liability

Having assured itself that the jurisdictional and procedural prerequisites to enter a default judgment are met, except as to Plaintiff's claims for NYLL wage statement and wage notice violations, the Court now must assess whether Plaintiff's well-pleaded factual allegations establish Defendants' liability as a matter of law.   As a threshold matter, Plaintiff must show an employer-employee relationship between himself and Defendants to prevail on his FLSA and NYLL claims. *Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056 (RER), 2022 WL 4586100, at *5 (E.D.N.Y.

---

[3] The Court notes that the Osborn St. and Crescent St. addresses are consistent with the addresses on record with the Secretary of State for Fire & Ice, *see* https://apps.dos.ny.gov/publicInquiry/ (last visited May 17, 2024), and Defendant Owens was served personally at Osborn St, (ECF No. 10).

Sept. 29, 2022).  Because district courts in the Second Circuit interpret "employer" under the NYLL coextensively with the definition the FLSA uses, the Court analyzes this threshold issue based on the FLSA's definitions.  *See Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372 (S.D.N.Y. 2022).

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  The Second Circuit uses a four-factor test based on "economic reality" to determine whether an employer-employee relationship exists.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013).  The test asks whether the defendant (1) had the power to hire and fire the plaintiff, (2) supervised and controlled the plaintiff's work schedules or conditions of employment, (3) determined the plaintiff's rate and method of payment, and (4) maintained employment records.  *Id.* at 105.  The court must consider the totality of the circumstances, and no single factor is dispositive. *Id.* at 106.

Here, Plaintiff has shown that he had an employer-employee relationship with Defendants.  Plaintiff Cooper alleges that he was employed as a driver and general worker at Defendants' courier company.  (Compl. at ¶¶ 6-7.)  Plaintiff alleges that Defendants had the power to hire and fire employees.  (*Id.* at ¶¶ 17, 24-28,

18

32.)  Plaintiff further alleges that Defendant Owens, as the courier business's owner and manager, set Plaintiff's work schedule and that each of the Defendants controlled the conditions of Plaintiff's employment.  (*Id.* at ¶¶ 15, 17, 27.)  Plaintiff also alleges that each defendant determined Plaintiff's rate and method of payment.  (*Id.* at ¶ 32.)  Finally, Plaintiff alleges that Defendant Owens, as the courier business's owner and manager, maintained employment records.  (*Id.* at ¶ 17.)  Thus, all four factors support a finding that as a matter of economic reality, the plaintiff had an employer-employee relationship with each defendant.  By the same token, the Court finds that Defendants are jointly and severally liable for the FLSA and NYLL violations discussed below.  *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685–66 (S.D.N.Y. 2011) (finding allegations that defendant was an "owner, partner, or manager" of plaintiff's corporate employer was enough to qualify him as an FLSA and NYLL employer and to impose joint and several liability with corporate defendant).

Plaintiff has also shown that he is not exempt from the FLSA. The FLSA does not extend minimum wage or overtime protections to an employee in a "bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1).  How the plaintiff spent his or her time is a factual question, but whether the employee's

activities trigger one of the FLSA's exemptions is a legal one. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 (2d Cir. 2020). Here, Plaintiff alleges that he worked at Defendants' courier company as a "driver and general worker." (Compl. at ¶ 6.) Although Plaintiff's work as a driver would not fall under any of the enumerated exemptions to the FLSA set forth in 29 U.S.C. § 213(a)(1), it does raise separate questions regarding whether Plaintiff falls within the Motor Carrier Act of 1935 ("MCA") Exemption to the FLSA and NYLL.

"The purpose of the motor carrier exemption is to avoid subjecting employers to overlapping regulatory regimes." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 264 (E.D.N.Y. 2012) (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661 (1947)); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 451 (E.D.N.Y. 2007) (explaining that the "[MCA] exemption was adopted . . . to avoid any problems that might arise if two government agencies had overlapping jurisdiction"). The motor carrier exemption "provides that the FLSA's overtime provision shall not apply to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." *Chaohui Tang v. Wing Keung Enterprises, Inc.*, 210 F. Supp. 3d 376, 390 (E.D.N.Y. 2016) (citation omitted). "[A]n employee will fall within the MCA exemption if (1) the employer qualifies as a 'motor carrier' or

'motor private carrier' as defined under the MCA; (2) the employee is engaged in 'safety-affecting activities'; and (3) is on a vehicle involved in interstate commerce." *Id.* at 400 (citing 29 C.F.R. § 782.2(a)).

Even assuming *arguendo* that Fire & Ice qualifies as a "motor carrier" or "motor private carrier" as defined under the MCA, the facts alleged in the Complaint and supplemental affidavits do not establish that the goods being transported by Plaintiff "were part of a practical continuity of interstate movement, so that plaintiffs would fall under the MCA exemption regardless of the activities performed." *Id.* at 397. Because Plaintiff Cooper has alleged in his supplemental affidavit that his "duties and responsibilities did not require [him] to travel out-of-state," the Court finds that his work does not fall under the MCA exemption. (Cooper Supp. Aff. at ¶10.)

Having found that Plaintiff is not exempt from the FLSA or NYLL, the Court next turns to the FLSA's interstate commerce requirement.[4] The FLSA requires that the plaintiff be either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206, 207(a). An employer is considered an "enterprise engaged in commerce" if it

---

[4] The NYLL lacks this requirement. *Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

has an annual gross sales volume of at least $500,000 and employees who handle, sell, or otherwise work on goods or materials that have been moving in, or produced for commerce by any person. 29 U.S.C. § 203(s)(1)(A).

Here, Plaintiff alleges the statutory requirements without providing any specific examples. (*See* Compl. ¶ 11.) Still, based on Plaintiff's allegations that Defendants' courier company has an annual gross sales volume of at least $500,000 and has employees "engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," the Court can reasonably infer that at least some of the equipment, goods, materials, and supplies used by Defendants have moved or engaged in interstate or international commerce. *See Kilmchak v. Cardona, Inc.*, No. 09-CV-4311 (MKB), 2014 WL 3778964, at *5 (E.D.N.Y. July 31, 2014) (noting that several courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant's business notwithstanding such pleading deficiencies).

Finding these threshold requirements satisfied, the Court proceeds to consider whether Defendants' alleged conduct violated the FLSA and NYLL.

### A.   Minimum Wage

The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works. For the entire relevant period, the federal minimum wage was $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  The New York City minimum wage varied during the relevant period but was $10.50 per hour for small employers[5] in 2017, $12.00 per hour for small employers in 2018, and $15 per hour in 2020 and thereafter.  NYLL § 652(a).

The plaintiff has the burden to prove that he or she was improperly compensated for the work he or she performed.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).  If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate.  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019).  An employer has a non-delegable duty to maintain accurate records of its employees' hours.  *Kuebel*, 643 F.3d at 363.  Thus, it would be unfair to require more substantial proof when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery.  *See Cabrera*, 412 F. Supp. 3d at 181.

---

[5] Because Plaintiff does not allege any facts showing that Defendants employed more than ten employees, the Court assumes for purposes of its analysis that Defendants constitute a small employer for purposes of the New York Labor Law. *See Campos Marin v. J&B 693 Corp.*, No. 19-CV-569 (JGK)(KHP), 2022 WL 377974, at *7 (S.D.N.Y. Jan. 21, 2022) (applying lower, small employer rate where plaintiff failed to allege that employer had eleven or more employees).

Moreover, Plaintiff here states that he was not required to keep track of his time and that he is unaware of Defendants having used any time tracking device that would have reflected his actual hours worked, so more precise evidence may not even exist in this case. (Compl. at ¶ 44.)

"For purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 371 (E.D.N.Y. 2022) (internal quotation marks and citation omitted). "Because Plaintiff is not covered by the New York Hospitality Industry Wage Order . . . the regular hourly rate of pay equals the Plaintiff's total weekly pay divided by the total number of hours worked in a given week." *Id.* Here, Defendants appear to have complied with the FLSA and NYLL minimum wage mandates when they paid Plaintiff Cooper $750 weekly for 55 hours per week, working out to approximately $13.64 per hour, for the time he worked prior to December 31, 2018. (*See* Cooper Supp. Aff. at ¶¶ 11–13.)

Defendants fell out of compliance, however, when they continued to pay Plaintiff the same weekly rate of pay for his similar work in July 2021 and thereafter, despite the increase in minimum wage in New York City[6] to $15 per hour and Plaintiff

---

[6] "When a state's minimum wage is higher than the federal minimum wage, the employer must pay the state minimum wage to satisfy the FLSA's minimum wage requirement." *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC), 2022

Cooper's increased hours from October 2022 forward. (*See* Cooper Supp. Aff. at ¶¶ 11–13.)   Therefore, the Court finds Defendants liable for violating the FLSA's and NYLL's minimum wage provisions.

**B. Overtime**

The FLSA and the NYLL's implementing regulations require an employer to pay an employee an overtime premium of one and one-half times the employee's regular rate for each hour the employee works above forty each week.  29 U.S.C. § 207(a); 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4.  Like with the FLSA's and NYLL's minimum wage mandates, the Court may presume the accuracy of Plaintiff's recollections and estimates of the hours they worked because Defendants have defaulted.  *Cabrera*, 412 F. Supp. 3d at 181.

Here, Plaintiff alleges that Defendants him $750 weekly, regardless of how many hours he worked. (Cooper Supp. Aff. at ¶ 13.)  Plaintiff typically worked 55 hours per week during the relevant period prior to October 2022, and 71.5 hours per week during the relevant period from October 2022 forward. (*Id.* at ¶¶11–13.)  Plaintiff states in his Complaint that he "never received an overtime premium of one and one-half times his regular rate of pay" for the hours he worked in excess of 40 hours per week. (Compl. at ¶ 41.)  Thus, the Court finds Defendants liable for violating the FLSA's and NYLL's overtime provisions.

WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022) (citing 29 C.F.R. § 778.5); *see also* 29 U.S.C. § 218(a).

25

### C.   Spread-of-Hours Pay

The NYLL's implementing regulations require an employer to pay an employee a "spread-of-hours" premium of one additional hour's pay at the basic minimum hourly rate for each workday that lasts longer than ten hours.  12 N.Y.C.R.R. § 142-2.4.  Here, Plaintiff alleges that he worked at least eleven hours per day for each day that he was employed by Defendants' courier company. (Compl. at ¶¶ 36-39.)  As mentioned previously, Plaintiff was paid a fixed weekly wage, and he explicitly claims that Defendants never paid him the required spread-of-hours premium.  (*Id.* at ¶ 81.) Thus, the Court finds Defendants liable for violating the NYLL's spread-of-hours provision.

## IV.  Relief

Because Plaintiff has established Defendants' liability as to Plaintiff's minimum wage, overtime, and spread-of-hours claims, the Court must determine whether Plaintiff is entitled to the relief he requests.

### A.   Collective Action Certification

Plaintiff's Complaint states that he seeks to prosecute this action as an FLSA "collective action."  (*See* Compl. at ¶¶ 49-52, p. 13.)  The FLSA authorizes an employee to sue on behalf of him or herself and all other similarly situated employees.  29 U.S.C. § 216(b).  To join in the action, other employees must "opt in" by written consent.  *Id.*  If the plaintiff makes a factual showing

that he or she and the potential opt-in plaintiffs were victims of a common unlawful policy or plan, the court conditionally certifies the action as a FLSA collective action and authorizes the plaintiff to send notice to potential plaintiffs who may be similarly situated. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). After those plaintiffs have opted in, the court determines whether they are in fact similarly situated to the named plaintiff. *Id.*

Because Plaintiff did not reiterate his collective action certification request in his Motion for Default Judgment, the Court considers the collective action abandoned. *See, e.g.*, *Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015). Additionally, in situations where the plaintiff seeks to certify a FLSA collective action and the defendant defaults, other courts in this circuit have entered default judgments in favor of only the named plaintiffs and have left the defendants the opportunity to defend themselves against claims by future plaintiffs. *See, e.g.*, *Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 16-CV-4179 (KAM), 2017 WL 10845064, at *2 (E.D.N.Y. Sept. 30, 2017); *Charvac v. M & T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA), 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013). The Court's decision applies only to Plaintiff Cooper and not to any of Defendants' other employees.

**B.   Damages**

The measure of damages in a FLSA or NYLL case is the amount the plaintiff should have been paid minus the amount the plaintiff was actually paid.  *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-4904 (PAE), 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 29, 2021).  The plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, though the plaintiff is entitled to relief under whichever statute provides the greater measure of damages. *Ventura v. Putnam Gardens Parking Corp.*, No. 20-CV-119 (JKG)(VF), 2023 WL 3603589, at *3 (S.D.N.Y. Mar. 20, 2023), *report and recommendation adopted,* 2023 WL 3601649 (S.D.N.Y. May 23, 2023).

Plaintiff Cooper worked the following hours while employed by the Defendants:

- "From May 2017 to, through and including December 2018, Cooper regularly worked five (5) days per week, from approximately 9:00 a.m. to 8:00 p.m. (i.e., for a total of approximately 11 hours each day), and for a total period of approximately 55 hours during each of the weeks, respectively."  (Compl. at ¶ 36; Cooper Supp. Aff. at ¶ 11.)

- "From July 2021 to, through and including December 2021, Cooper regularly worked five (5) days per week, from approximately 9:00 a.m. to 8:00 p.m. (i.e., for a total of approximately 11 hours each day), and for a total period of

approximately 55 hours during each of the weeks, respectively." (Compl. at ¶ 37; Cooper Supp. Aff. at ¶ 11.)

- "From June 2022 to, through and including September 2022, Cooper regularly worked five (5) days per week, from approximately 9:00 a.m. to 8:00 p.m. (i.e., for a total of approximately 11 hours each day), and for a total period of approximately 55 hours during each of the weeks, respectively." (Compl. at ¶ 38; Cooper Supp. Aff. at ¶ 11.)

- "From October 2022 to, through and including January 4, 2023, Cooper regularly worked six (6) or seven (7) days per week, from approximately 9:00 a.m. to 8:00 p.m. (i.e., for a total of approximately 11 hours each day), and for a total period of approximately 66 to 77 hours during each of the weeks, respectively." (Compl. at ¶ 39; Cooper Supp. Aff. at ¶ 12.)

### 1.   Minimum Wage, Overtime, and Spread of Hours

The amount of unpaid minimum and overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL. The greater of Plaintiff's regular rate of pay[7] or the applicable lawful minimum wage for each period—$10.50 per hour in 2017, $12.00 per hour in 2018, and $15 per hour in 2021 and thereafter—is

---

[7] Because the Court does not find Plaintiff to fall under New York's Hospitality Industry Wage Order, it calculates his regular rate of pay "by dividing the total hours worked during the week into the employee's total earnings," resulting in $13.64 prior to October 2022, and $10.50 thereafter.  12 N.Y.C.R.R. § 142-2.16

multiplied by 40 to account for the appropriate weekly pay for Plaintiff's regular, full-time work hours.  Next, any weekly hours worked in excess of 40 are multiplied by the applicable overtime wage—1.5 times the applicable wage[8]—and added to the amount of regular wages.  Spread-of-hours pay is calculated by multiplying the legal minimum wage rate by the number of days that Plaintiff worked in excess of 10 hours per day in each period, and is added to the amount of wages Plaintiff should have been paid.

Subtracted from the above combined amounts is the pay that Plaintiff actually received, which is calculated by multiplying the $750-per-week rate by the total number of weeks Plaintiff Cooper worked.  This resulting dollar value is the total unpaid minimum wages, overtime wages, and spread-of-hours pay owed to Plaintiff.  (*See* Cooper Supp. Aff. Ex. A, Plaintiff's Damages Chart.)

The Court's calculations of the amount Plaintiff should have been paid for his regular hours (up to 40 each week) is as follows:

---

[8] "The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *16 (E.D.N.Y. Sept. 22, 2017) (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107).  "New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA." *Id.* (citing 12 N.Y.C.C.R.R. § 142-2.2.).

| Time Period | Regular Rate of Pay or Minimum Wage | Regular Hours | Regular Pay Owed Per Week | Weeks Worked in Period | Pay Owed for Regular Hours |
|---|---|---|---|---|---|
| **May 2017 through December 2017** | $13.64 | 40.0 | $545.45 | 34.9 | $19,012.99 |
| **January 2018 through December 2018** | $13.64 | 40.0 | $545.45 | 52.0 | $28,363.64 |
| **July 2021 through December 2021** | $15.00 | 40.0 | $600.00 | 26.1 | $15,685.71 |
| **June 2022 through September 2022** | $15.00 | 40.0 | $600.00 | 17.3 | $10,371.43 |
| **October 2022 through January 4, 2023** | $15.00 | 40.0 | $600.00 | 13.6 | $8,142.86 |
| | | | | **Total:** | **$81,576.62** |

The Court's calculations of the amount Plaintiff should have been paid for his overtime hours in excess of 40 each week is as follows:

| Time Period | Lawful Overtime Wage | Over-time Hours | Overtime Pay Owed Per Week | Weeks Worked in Period | Lawful Pay for Overtime Hours |
|---|---|---|---|---|---|
| **May 2017 through December 2017** | $20.45 | 15.0 | $306.82 | 34.9 | $   10,694.81 |
| **January 2018 through December 2018** | $20.45 | 15.0 | $306.82 | 52.0 | $   15,954.55 |
| **July 2021 through December 2021** | $22.50 | 15.0 | $337.50 | 26.1 | $    8,823.21 |
| **June 2022 through September 2022** | $22.50 | 15.0 | $337.50 | 17.3 | $    5,833.93 |

31

| October 2022 through January 4, 2023 | $22.50 | 31.5 | $708.75 | 13.6 | $ | 9,618.75 |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | **Total:** | **$ 50,925.24** |

The Court's calculations of the amount Plaintiff should have been paid for spread-of-hours pay is as follows:

| Time Period | Lawful Minimum Wage | Days Worked per Week | Weekly Spread of Hours Pay | Weeks Worked in Period | Lawful Spread-of-Hours Pay |
| --- | --- | --- | --- | --- | --- |
| **May 2017 through December 2017** | $10.50 | 5 | $ 52.50 | 34.9 | $ 1,830.00 |
| **January 2018 through December 2018** | $12.00 | 5 | $ 60.00 | 52.0 | $ 3,120.00 |
| **July 2021 through December 2021** | $15.00 | 5 | $ 75.00 | 26.1 | $ 1,960.71 |
| **June 2022 through September 2022** | $15.00 | 5 | $ 75.00 | 17.3 | $ 1,296.43 |
| **October 2022 through January 4, 2023** | $15.00 | 6.5 | $ 97.50 | 13.6 | $ 1,323.21 |
| | | | | **Total:** | **$ 9,530.36** |

Combined together, the Court calculates the amount that Plaintiff Cooper should have been paid during the relevant period as **$142,032.22**. Next, the Court calculates the amount that Plaintiff Cooper was *actually* paid during the relevant period:

| Time Period | Weeks Worked | Weekly Pay | Actual Pay for Period |
| --- | --- | --- | --- |
| **May 2017 through December 2017** | 34.9 | $750.00 | $ 26,142.86 |

32

| | | | |
|---|---|---|---|
| **January 2018 through December 2018** | 52.0 | $750.00 | $ 39,000.00 |
| **July 2021 through December 2021** | 26.1 | $750.00 | $ 19,607.14 |
| **June 2022 through September 2022** | 17.3 | $750.00 | $ 12,964.29 |
| **October 2022 through January 4, 2023** | 13.6 | $750.00 | $ 10,178.57 |
| | | **Total:** | **$107,892.86** |

Subtracting the amount that Plaintiff Cooper was paid ($107,892.86) from the amount that he should have been paid during the relevant period ($142,032.22), the Court calculates his unpaid wages as $34,139.37, and awards to Plaintiff Cooper damages in the amount of $34,139.37[9].

## 2. Liquidated Damages

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. § 260; NYLL § 663(1). Here, Plaintiff repeatedly alleges that Defendants' misconduct was willful, and that Defendants were not acting in good faith. (*See* Compl. ¶¶ 54-55, 61-62, 64-65, 71-72, 81-83.) Moreover, Defendants have not

---

[9] The Court notes that this calculation differs from the wage table proffered by Plaintiff's counsel. Plaintiff's table erroneously states the lawful minimum wage for 2018 as $15.00 and fails to include spread-of-hours pay for 2017. (Cooper Supp. Aff. Ex. A.) New York City's minimum wage did not reach $15 per hour until on and after December 31, 2018, for large employers, and on and after December 31, 2019, for small employers. NYLL § 652(a).

answered or otherwise appeared in this action, so they have forfeited their opportunity to prove good faith. *Chen v. Oceanica Chinese Rest.*, No. 13-CV-4623 (NGG), 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023). Thus, the Court finds Plaintiff is entitled to liquidated damages for Defendants' violations of the FLSA and NYLL.

The Second Circuit has interpreted the NYLL to preclude the duplicate award of liquidated damages under both the NYLL and FLSA. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Because "the law providing the greatest recovery will govern," Plaintiff is awarded liquidated damages under the NYLL, calculated at 100% of total wages owed under the minimum wage and overtime claims, available under both the FLSA and NYLL, and spread-of-hours claims, available only under the NYLL. *Charvac v. M & T Project Mgrs. of N.Y., Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), *report and recommendation adopted as modified*, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015). The Court therefore awards liquidated damages to Plaintiff Cooper in the amount of $34,139.37.

### 3.   Pre- and Post-Judgment Interest

Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48-49 (E.D.N.Y. 2015). To avoid giving the plaintiff a windfall, however, courts award pre-judgment interest only on compensatory

damages and not on any liquidated damages award. *Id.* at 49. Courts calculate pre-judgment interest on a NYLL award at a rate of 9% per year. CPLR § 5004. For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date. CPLR § 5001(b). Courts have discretion to determine a reasonable intermediate date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date. *Elghourab v. Vista JFK, LLC*, No. 17-CV-911 (ARR), 2019 WL 2431905, at *12 (E.D.N.Y. June 11, 2019).

Here, for ease of calculation and transparency, the Court sets March 3, 2020, as the intermediate date for Plaintiff Cooper because that date marks the halfway point in his employment with Defendants during the relevant period. Defendants owe Plaintiff Cooper daily pre-judgment interest in the amount of $8.42 (($34,139.37 x 0.09 annual rate) / 365 days), starting from the March 3, 2020, midpoint through the date the Clerk of Court enters judgment in this case. The number of days between March 3, 2020, and the date of entry of judgment, July 9, 2024, is 1,589. Accordingly, the prejudgment interest owed to Plaintiff Cooper is $13,379.38 (1,589 days x $8.42).

### 4. Attorneys' Fees and Costs

The FLSA and NYLL each authorize an award of "reasonable" attorneys' fees. 29 U.S.C. § 216(b); NYLL § 663(1). The standard method for determining reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany and Albany Cty. Bd. Of Elections*, 522 F.3d 182, 188-90 (2d Cir. 2007). "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015). The applicant also must provide contemporaneous records indicating "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The court may look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York to determine the reasonableness of a fee request. *Fermin*, 93 F. Supp. 3d at 52.

Here, Plaintiff has provided a spreadsheet showing the number of hours that each attorney and staff member expended litigating this case along with each person's hourly rate. (*See* Mizrahi Decl. Ex. B.) This spreadsheet shows that associate Jason Mizrahi

completed 29.15 hours of work on this case and that paralegal Alexis Abrego completed 1.7 hours. The Court omits the two one-hour entries for process servers and filing fees, which are listed under Ms. Abrego's name but appear to reflect costs to the firm and not hours of work she billed at her hourly rate. Plaintiff requests hourly rates of $350 for Mr. Mizrahi and $50 for Ms. Abrego. (Mem. at 20.) Plaintiff also requests an hourly rate of $500 for partner Joshua Levin-Epstein, (*id.*), but the spreadsheet does not reflect that he did any work on this case and he is not entitled to fees, (*see* Mizrahi Decl. Ex. B).

The Court calculates Plaintiff's total fee request at $10,287.50, which represents ($350 hourly rate * 29.15 hours) + ($50 hourly rate x 1.7 hours). Puzzlingly, Plaintiff's motion requests $10,287.50 "[a]pplying the percentage method," despite having spent two pages discussing fees under the "lodestar" method and attaching a spreadsheet to support the lodestar calculation. (Mem. at 19-20.) As the Court has previously noted on several other occasions involving Plaintiff's counsel, this reference to the percentage method appears to have been made in error by counsel. *See, e.g., Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM), 2023 WL 8003303, at *11 (E.D.N.Y. Nov. 17, 2023); *Zabrodin v. Silk 222, Inc.*, No. 22-CV-7064 (KAM), 2023 WL 8009319, at *13 (E.D.N.Y. Nov. 20, 2023). The Court encourages Plaintiff's

counsel to rectify this erroneous reference to the "percentage method" in future filings.

Similar to *Zabrodin v. Silk 222, Inc.*, a case involving the same counsel as the instant case, the Court finds the 30.85 hours for which Plaintiff's counsel seeks compensation to be unreasonable, "especially given [Plaintiff's] counsel's repeated errors." 2023 WL 8009319, at *13. A close review of Plaintiff's counsel's billing records reveals inflated billing.

Plaintiff's counsel billed 1.25 hours each for two half-page letters requesting an extension of time to file the motion for default judgment, and 1 hour for the third similar letter requesting an extension. (Mizrahi Decl. Ex. B. at 2-3.) Plaintiff's counsel billed 2.25 hours for the drafting of his declaration in support of the motion for default judgment despite the fact that the declaration appears nearly identical to the declaration filed in *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM), as ECF No. 21. As mentioned in this Court's Memorandum and Order in *Zabrodin v. Silk 222, Inc.,* "[g]iven the striking similarities between the papers [Plaintiff's] counsel filed in these . . . relatively straightforward cases, it was unreasonable that [Plaintiff's] counsel could not litigate this case more efficiently." 2023 WL 8009319, at *14.

The Court exercises its discretion to deduct a reasonable percentage of the inflated 30.85 hours for which Plaintiff's

counsel seek compensation "as a practical means of trimming the fat" from the fee request. *See Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 111-12 (E.D.N.Y. 2013) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)). Thus, the Court deducts fifteen percent of the hours Mizrahi billed and awards fees for approximately 24.8 hours of work by Mizrahi and 1.7 hours of work by Abrego.

The Court also finds Mizrahi's requested hourly rate of $350 excessive because it is at the high end of what courts in this district generally award for work by senior associates in FLSA and NYLL cases. *See Jones v. Pawar Bros. Corp.*, No. 17-CV-3018 (PKC), 2023 WL 6214213, at *8 (E.D.N.Y. Sept. 25, 2023) (describing the hourly rates of senior associates in this District as ranging from $200-$325). The Court observes that other courts in this district recently have approved Mr. Mizrahi's and Ms. Abrego's hourly rates, but Mr. Mizrahi's rate generally has been approved at $325 rather than the $350 that Plaintiff seeks in this case. *See, e.g.*, *Sims v. Crown Waste Corp.*, No. 22-CV-6047 (BMC), 2023 WL 363070, at *2 (E.D.N.Y. Jan. 23, 2023). Moreover, Plaintiff's counsel made several errors that needlessly complicated the Court's resolution of an otherwise routine default judgment motion.[10] *See*

---

[10] Errors included (1) initially filing the motion for default judgment with an erroneous affidavit, which required the Court to issue an Order to Show Cause why Fed. R. Civ. P. 11 sanctions should not be ordered, (Docket Order dated December 19, 2023); (2) attaching a damages spreadsheet that incorrectly states the applicable minimum wage, *see supra* n.9; and (3) making an unsupported

*Gesualdi v. Stallone Testing Labs., Inc.*, No. 10-CV-646 (ENV), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (explaining that filing, drafting, and calculation errors that waste judicial resources may warrant a fee reduction).  Thus, the Court reduces Mr. Mizrahi's hourly rate to $250 per hour and awards $6,279.38 in attorney's fees, which represents Plaintiff's lodestar calculation with a reduced hourly rate.

The Court awards $749.00 in costs, which include process server charges of $324.00 plus $425.00 in filing fees.  *See* 29 U.S.C. § 216(b); NYLL § 198(4).  Plaintiff's request for this amount in costs, (Mem. at 20), is supported by documentation attached to the motion, (*see* Mizrahi Decl. Ex. C).

### 5.    Post-Judgment Interest

Plaintiff is entitled to post-judgment interest as of right. 28 U.S.C. § 1961.  Thus, post-judgment interest shall accrue from entry of judgment at the federal statutory rate until the judgment is paid in full.

### CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment is granted in part and denied in part.

Plaintiff Cooper is entitled to the principal balance of $68,278.73 and pre-judgment interest at the daily rate of $8.42

---

request for attorney's fees based on the percentage method, *see supra* p. 37. Attorney errors pose special problems in the default judgment context, where courts cannot rely on the adversarial process to reveal them.

from March 3, 2020, to the date of entry of judgment, July 9, 2024, totaling $13,379.38, as well as post-judgment interest at the rate set forth in 28 U.S. § 1961(a), from the date of the entry of judgment until the date of payment in full.

Plaintiff is entitled to attorneys' fees in the amount of $6,279.38 and costs in the amount of $749.00.

The Court denies Plaintiff's request to certify this action as a FLSA collective action.

The Court dismisses without prejudice Plaintiff's NYLL claims for wage notice and wage statement violations.

The Clerk of Court is respectfully directed to enter judgment awarding Plaintiff $88,686.49, along with statutory post-judgment interest, in accordance with this Memorandum and Order.  Plaintiff is ordered to serve a copy of this Memorandum and Order and the Judgment on all defendants and file declarations of service for each defendant within two days after the Clerk of Court enters the Judgment.

**SO ORDERED.**

Dated:     July 9, 2024
           Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York