# LAW OFFICE OF ROBERT L. GREENER P.C.
### 136 Madison Avenue, 5th Floor
NEW YORK, NEW YORK 10016
(646)415-8920 Phone
rlg@greenerlegal.com
www.greenerlegal.com

July 10, 2025

<u>*Via ECF*</u>
Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: Cooper v. Fire & Ice Trucking, Corp. et al**
       **Case No. 1:23-cv-01675-KAM-TAM**

Dear Judge Matsumoto:

Defendants Fire & Ice Trucking Corp. and Cheryl Owens (together, "Defendants") respectfully submit this opposition to Plaintiff's letter motion in limine, filed July 9, 2025 (Dkt. No. 75), seeking to preclude introduction of "Scanner Reports" and "employment information from FedEx" at the July 11th show-cause hearing. For the reasons below, Plaintiff's motion should be denied in its entirety.

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Chan,* 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citing *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Wechsler v. Hunt Health Sys., Ltd.,* 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (quoting *Baxter Diagnostics,* 1998 WL 665138, at *3). In considering a motion in limine, courts may reserve judgment until trial, so that the motion is placed in the appropriate factual context. See *Nat'l Union Fire Ins.* Co., 937 F. Supp. at 287 (citing *Hawthorne Partners v. AT&T Tech., Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (stating that a motion in limine to exclude evidence should be granted only "when evidence is clearly inadmissible on all potential grounds. . . [and] [u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial")).

### I. The Scanner Reports Are Properly Before the Court

1. **FedEx Production**

Plaintiff misconstrues the extent of FedEx's document production. FedEx produced its native scanner data on July 2, 2025, consisting of metadata files reflecting every package scanned on Defendant's behalf. Defendants then properly incorporated those records as authenticated by

Ms. Regina Costin, custodian of records for Federal Express annexed as Exhibit A to Mr. Shawn Ponds June 25, 2025 declaration. It also included in the pre-marked Employment records which are Plaintiff's Exhibit "8". Contrary to Plaintiff's suggestion, Defendants have not "manufactured" pages. All "318 individual pages" are simply the printouts of the raw scanner logs, paginated for clarity. No new or extraneous data has been added.  Rather, the Copy sent to the Court and Plaintiff's Counsel was a copy highlighted by Defendants' Counsel so the Court could identify the relevant portion of the information in this case.

   2. **Foundation and Authentication.**

Under Fed. R. Evid. 901(a), authentication may be satisfied by testimony of a custodian or other qualified witness. Ms. Regina Costin submitted a certified statement as to the authenticity. Here, Mr. Ponds is the Operations Manager for Fire & Ice Trucking will testify to how the data from Federal Express is collected for each employee of all delivery companies who are subcontractors for Federal express. He oversaw Fire & Ice's fulfillment under the ISP Agreement, (Trial Exhibit  Number "1") and is it manager.  Under the ISP Section 9, Fire & Ice was required to use the scanner devices carried by each delivery person employed by them. Thus, each individual scanner not only downloaded the FedEx logs as they related to Defendants' deliveries, and verified their completeness; they were simultaneously uploaded to Federal Express' servers at the same time as it was uploaded to Defendants' servers, and thus it is reliable.

Mr. Shawn Ponds will testify to the forgoing information at trial.  A prior declaration from him also attests to this information, and was not objected to by Plaintiffs. His declaration provides a sufficient foundation: he attests to the chain of custody from FedEx to Fire & Ice, and to the accuracy of the printouts.

Plaintiff has not identified specific information he claims is improper.  Rather, Plaintiff stated the records are unreliable because they do not address "schedules, attendance records or time sheets, and payroll information".  However, the records are not being produced to show any of the forgoing information.  They are being introduced to show the dates and times Mr. Cooper activated the scanner and who was his employer at the time.  Plaintiff has not objected to the documents on these grounds.  Further, Plaintiff himself has not submitted a declaration stating that the he did not use the scanner or disputing the accuracy of the information it collected.  It is Plaintiff's burden to show the information cannot not be admitted under any grounds. United States v. Pugh, 162 F. Supp. 3d 97 (E.D.N.Y. 2016)


   3. **Business-Records Hearsay Exception.**

Even if the reports constitute hearsay, they fall squarely within the business-records exception, Fed. R. Evid. 803(6). The scanner data were:

   1. Made at or near the time of the event (scans as they occurred);

   2. By, or from information transmitted by, a person with knowledge (FedEx personnel using the scanners);

   3. Kept in the course of regularly conducted FedEx business; and

   4. Trustworthy, as evidenced by FedEx's standard operation protocols and metadata logs showing system integrity.

Plaintiff has confused the scanner reports with the Federal Express information. The Scanner report is from Fire & Ice and are internal records collected from the device used by each delivery person hired by them. Defendant uses that information as the basis from which the weekly payroll is derived. This information is collected by Defendant daily, and is the time records for Mr. Cooper during his employment with Federal Express. The Federal Express records are also derived from the same scanner device, and is used internally by them to keep account of each delivery person who is required to deliver packages under the ISP agreement. Thus, the scanner report and Federal Express employment information are business records which focus on Mr. Coopers time and wage issue and are very relevant to the questions before the Court.

### II. The ISP Agreement Does Not Bar Production or Use of Scanner Data

**Subpoena Power and Third-Party Control.**

Section 9.2 of the ISP requires each contractor with Federal Express to obtain from them priority scanner devices for all delivery servicers, which in this case was Mr. Cooper. Mr. Cooper does not deny he carried such a device during his employment with Fire & Ice. Further, Mr. Cooper has presented no evidence that the Scanner data is unreliable.

The "no transfer" provision in Section 9.6 of the ISP Agreement governs only internal assignment of proprietary rights; it does not nullify Defendants' subpoena power under Fed. R. Civ. P. 45. By order of this Court (Minute Entry, June 11, 2025), if it did Federal Express would have objected and moved to quash the subpoena. Defendants duly subpoenaed FedEx for all documents "concerning or referring to Plaintiff," including scanner data. FedEx complied, producing its complete logs. Importantly, Plaintiff did not move to quash or limit the subpoena in any way. See Trail Exhibit "1".

**Possession, Custody, or Control.**

Fed. R. Civ. P. 45 requires production by the non-party custodian, not by Defendants directly. The fact that Defendants did not themselves possess the native FedEx database is irrelevant.

### III. The Scanner Reports Are Highly Relevant and Not Unfairly Prejudicial

**Relevance Under Rule 401–402.**

The core issue before the Court at the show-cause hearing is whether Plaintiff actually performed compensable hours in excess of forty per week for which he was not paid. He also claimed to have worked for Defendant in the period from 2017 to December 2019, during which he claimed to have received the wages. Scanner timestamps are dispositive evidence of route completion times and work volume. As the information is shared between Federal Express and the

individual contractors, the information produced is dispositive on the question of when Defendant actually worked for Defendant. There is no conceivable dispute over their probative value.

Plaintiff is seeking to have this information excluded because it reveals his claims as to working for Defendant from 2017 until the start of 2020 is false, and a fraud upon the Court. The Federal Express data actually connects Plaintiff to each company he worked with as a delivery person for a Federal Express subcontractor.

### No Prejudice or Confusion Under Rule 403.

Plaintiff claims the reports will "obfuscate" the issue but transparency and detail are essential to an accurate inquiry. The Court can manage presentation, limiting witness testimony to summaries or key pages without wholesale exclusion. Excluding such central evidence would undermine the fact-finding process.

### V. Defendants Have Acted in Good Faith

Throughout discovery, Defendants have engaged with Plaintiff's counsel regarding production and settlement. Any suggestion of dilatory conduct is unfounded. Defendants met the Court's deadlines, conferred in writing on production scope, and timely filed all status letters and declarations. I have discussed settlement with Mr. Mizrahi and my clients present a offer of judgment which was rejected. What he complains about is that my clients did not agree to the Plaintiff's settlement demands and instead want their day in Court. Because they do not believe they owe the money in the judgment, and received no notice of this case prior to being served the restraining notice. There is no prejudice in seeking to vindicate one's rights. Mr. Mizrahi brought this case and if he failed to present true and accurate information from his client to the Court, then his judgment should be voided.

### Conclusion

For the foregoing reasons, Plaintiff's letter motion in limine should be denied in full. Defendants respectfully request that the Court allow introduction of the scanner reports and related FedEx employment data at the July 11 show-cause hearing.

Respectfully submitted,

ROBERT L. GREENER